# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**TIFFANY B. LANDRY,**
**PATRICIA WASHINGTON, and**
**TASCO GILMORE**

**CIVIL ACTION**

**VERSUS**

**NO. 17-227-JWD-EWD**

**LOUISIANA CORRECTIONAL**
**INSTITUTE FOR WOMEN, ET AL.**

## RULING AND ORDER

Before the Court is a Motion for Judgment on the Pleadings by Defendants, Former Warden Jim Rogers, Warden Fredrick Boutte, Dr. John F. Prejean, Medical Director Doe, and Nurse Practitioner Pamela B. Ross, (collectively "Defendants").[1]  (Doc. 67).  Plaintiffs, Tiffany B. Landry, Patricia Washington, and Tasco Gilmore (collectively "Plaintiffs") oppose the motion. (Doc. 74).  Oral argument is not necessary.  After carefully considering the law, the allegations of the operative complaint, and the arguments of the parties, Defendants' Motion for Judgment on the Pleadings is granted in part and denied as moot in part.

## I.      Relevant Factual and Procedural Background

### A.  Plaintiffs' Allegations

Plaintiff Landry became incarcerated at LCIW from June 16, 2015 to June 6, 2016.  (Doc. 52, p. 5, ¶¶ 15-16).  During Landry's incarceration, she became ill and alleges that she "began informing the prison personnel and/or authorities of her serious medical condition and problems

---

[1] The original Defendants in this action were: The Louisiana Correctional Institute for Women ("LCIW"); Warden Frederick Boutte; Former Warden Jim Rogers; Medical Unit Director Doe; Dr. John F. Prejean, Jr.; Nurse Practitioner Pamela B. Ross; and Office of Risk Management ("ORM") (collectively, the "Original Defendants").  (Doc. 52).  As set forth below, some of the Original Defendants have been dismissed, and some of Plaintiffs' claims against the remaining Defendants have been dismissed.  The instant Ruling and Order addresses all remaining claims in this case.

… and need for immediate … medical attention". (Doc. 52, p. 5, ¶ 16). Plaintiffs allege that the "initial notification" of illness was on or about May 30, 2016, at which time Landry allegedly experienced "complaints of speech and/or writing difficulty, generalized weakness including arm weakness, and complaints of bilateral lower extremity tingling … coupled with walking difficulty". (Doc. 52, p. 5, ¶ 17).

Plaintiffs claim that Landry was treated by Dr. Prejean and Nurse Practitioner Ross, for injuries commencing May 30, 2016, until she was released from LCIW. (Doc. 52, pp. 4-5, ¶¶ 12-13). Plaintiffs allege that Medical Unit Director Doe was the unit head of the medical division at LCIW at the time Landry was treated. (Doc. 52, p. 5, ¶ 14). Nurse Practitioner Ross allegedly "ignored" the initial complaints of Landry on May 30, 2016, and allegedly "refused" to allow Landry to be taken to the infirmary. (Doc. 52, p. 6, ¶ 18).

Landry was taken to the infirmary on May 31, 2016 and was informed that she had suffered a "stroke and/or stroke-like symptoms". (Doc. 52, p. 6, ¶ 19). Plaintiffs claim that Landry was not brought to an emergency medical facility apart from LCIW for further medical treatment, despite her "repeated complaints and requests". (Doc. 52, p. 6, ¶ 21).

On or about June 1, 2016, Dr. Prejean conducted an EKG, lab work and x-rays of Landry. Plaintiffs allege that Landry's blood pressure was "abnormally high". (Doc. 52, p. 6, ¶ 22). Plaintiffs claim that Landry requested additional medical care but was told that there was nothing that the LCIW prison staff could do for Landry, and "she was ignored, causing her symptoms and condition to manifest and become more severe, resulting in her increased suffering, pain and damage to her brain, nervous system, and ability to ambulate correctly". (Doc. 52, pp. 6-7, ¶¶ 23-24). Plaintiffs claim that Landry's condition progressively worsened until her release on June 6,

2016, when LCIW advised Landry's family that Landry was unable to walk without assistance. (Doc. 52, p. 7, ¶¶ 25-26).

Plaintiff Washington (Landry's mother) and Plaintiff Gilmore (Landry's brother) picked Landry up from LCIW and "observed [her] severe and serious medical condition", and they allegedly suffered mental anguish or emotional distress. (Doc. 52, pp. 1, 7, ¶¶ 4, 27).

After her release from LCIW, Landry was treated at St. Bernard Parish Hospital. Plaintiffs claim that the hospital told them that LCIW did not properly treat Landry and that she had suffered a stroke. (Doc. 52, p. 8, ¶ 28). According to Plaintiffs' complaint, due to Landry's "altered mental status", she was transferred to University Medical Center ("UMC") in New Orleans for evaluation and treatment. (Doc. 52, p. 8, ¶ 29). Plaintiffs plead that UMC diagnosed Landry with a "brain tumor" and that she underwent a craniotomy. (Doc. 52, p. 8, ¶ 30). Plaintiffs claim that the inadequate medical treatment by Dr. Prejean, Nurse Practitioner Ross and others was the "proximate cause which disabled [Landry]", inhibited proper medical care for a "stroke victim", and which ultimately resulted in more significant impairment. (Doc. 52, p. 9, ¶ 32). Plaintiffs also plead that is was the "pattern and practice" of LCIW to "ignore and disregard" medical requests, that the wardens "knew or should have known" that the constant disregard for Landry's stroke symptoms would further damage her neurological system, that the wardens made a conscious decision not to allow additional medical treatment outside the prison, and that Dr. Prejean, Nurse Practitioner Ross and Medical Unit Director Doe decided not to recommend and to block medical treatment offsite. (Doc. 52, pp. 9-10, ¶¶ 33-38).

Plaintiffs allege that Defendants violated 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, as well as Louisiana state law due to acts of negligence. (Doc. 52, pp. 10-16). Plaintiffs' claims against LCIW were dismissed on January 8,

2018, based on sovereign immunity under the Eleventh Amendment. (Doc. 30). Plaintiffs' claims against ORM were voluntarily dismissed on January 25, 2019. (Doc. 72). Plaintiffs' claims against the remaining Defendants in their official capacity only were dismissed without prejudice for lack of jurisdiction on May 23, 2018. (Doc. 40). Defendants bring the instant motion seeking dismissal of Plaintiffs' remaining claims under 42 U.S.C. § 1983, dismissal of Washington and Gilmore's claims under La. Civ. Code art. 2315.6 for bystander damages, and for the Court to decline supplemental jurisdiction over Plaintiffs' other state law claims. (Doc. 67).

### B. Present Motion

#### 1. Defendants' Argument

Defendants first seek dismissal of Plaintiffs' claims against Defendants in their official capacity under 42 U.S.C. § 1983. (Doc. 67-1, pp. 6-7). Defendants acknowledge that "LCIW and all official capacity claims have already been dismissed by this Court. (*See* Rec. Doc. 30). However, Plaintiffs mistakenly included the same claims in their *Second Amended Complaint*. Out of [an] abundance of caution, Defendants respond accordingly." (Doc. 67-1, p. 7, n. 49).

Defendants next seek dismissal of Plaintiffs' claims under Section 1983 against Defendants in their individual capacities. (Doc. 67-1, p. 7). Defendants address Plaintiffs' claims against Defendants in their individual capacities by grouping the Defendants into three groups: (a) Former Warden Rogers, Warden Boutte, and Medical Unit Director Doe, (Doc. 67-1, pp. 7-10); (b) Dr. Prejean and Nurse Practitioner Ross, (Doc. 67-1, pp. 10-17); and (c) Former Warden Rogers, Warden Boutte, Dr. Prejean, Medical Unit Director Doe, and Nurse Practitioner Ross, (Doc. 67-1, pp. 17-20).

With regard to the first group of Defendants (Former Warden Rogers, Warden Boutte, and Medical Unit Director Doe), Defendants argue that Plaintiffs' claims should be dismissed because

4

these Defendants are supervisors, and supervisors are not liable for the acts of their subordinates under Section 1983. (Doc. 67-1, p. 7). In support, Defendants argue that the first group of Defendants (1) can not be found liable for any acts or omissions of the LCIW medical employees who directly treated Plaintiff Landry, and (2) because they did not treat and were not qualified to treat Plaintiff Landry directly. (Doc. 67-1, p. 8).

Further, Defendants argue that Plaintiffs have not sufficiently developed the facts indicating that the first group of Defendants had any personal involvement with Plaintiff Landry. (Doc. 67-1, pp. 8-9). Defendants argue that it is insufficient for Plaintiffs to allege a "pattern and practice" of LCIW to "ignore and disregard summarily virtually every single medical request" and that this "callous disregard" was "directed by, sanctioned by, and encouraged by" the first group of Defendants. (Doc. 67-1, p. 8 (citing Doc. 52, p. 9, ¶¶33-35)).

Defendants conclude that the allegations against the first group of Defendants "rest upon nothing more" than their supervisory positions. In order for the first group of Defendants to be found liable under Section 1983, they must have been personally involved in the alleged conduct adverse to Landry. Any allegations related to the acts of their subordinates or co-employees is insufficient to state a claim under Section 1983. (Doc. 67-1, pp. 9-10).

Regarding the second group of Defendants (Dr. Prejean and Nurse Practitioner Ross), Defendants argue that Plaintiffs fail to state a claim upon which relief can be granted because Plaintiffs' allegations "do not rise to the level of a constitutional violation by demonstrating deliberate indifference to a serious medical need of Plaintiff Landry's". (Doc. 67-1, p. 12). Defendants argue that in order for the second group of Defendants' actions to qualify as "deliberate medical indifference", Plaintiffs must show (1) that the inmate had a serious medical need; (2) that the prison officials showed deliberate indifference to the inmate's serious medical need; and (3)

the deliberate indifference caused the inmate's injury." (Doc. 67-1, p. 10 (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976))). Defendants argue that "negligent or mistaken medical treatment or judgment" does not qualify as "deliberate indifference" and does not implicate a violation of constitutional rights. (Doc. 67-1, p. 11). In particular, Defendants argue that Plaintiffs have failed to show that the second group of Defendants "refused to treat Landry, ignored Landry's complaints, intentionally treated Landry incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs". (Doc. 67-1, p. 12).

Defendants argue that Plaintiffs' complaint with regard to Landry's medical care is that "attention has been inadequate or improper", that Landry is "unhappy with the care that was provided", and that Landry believes "additional care was warranted". (Doc. 67-1, pp. 14-15). Defendants argue that these types of complaints—of dissatisfaction and questioning medical judgment—do not support a claim of deliberate medical indifference. (Doc. 67-1, p. 15). Defendants conclude that Plaintiffs have failed to allege that the second group of Defendants demonstrated deliberate indifference to a serious medical need and, therefore, failed to state a claim upon which relief can be granted. (Doc. 67-1, p. 17).

Defendants' third group includes all Defendants, and, as to them, Defendants argue qualified immunity. (Doc. 67-1, p. 17). Defendants assert the "two step method" to determine whether they are entitled to qualified immunity. The first step is to consider whether, taking the facts as alleged in the light most favorable to the inmate, Defendants' conduct violated the inmate's constitutional rights. (Doc. 67-1, p. 18 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009))). The second step is for the court to determine whether the right allegedly violated was clearly established at the time of the infraction. (*Id.*).

Defendants argue that their conduct did not violate Landry's constitutional rights. (Doc. 67-1, p. 18). Plaintiffs allege that Landry "was ignored and abandoned and therefore, she was furthermore forced to suffer in pain and with no adequate medical treatment whatsoever at LCIW". (Doc. 67-1, p. 19 (citing Doc. 52, p. 7, ¶ 24)). But Defendants respond that these allegations are "nothing more than unsupported, conclusory allegations that Plaintiff Landry's rights were violated by Defendants because she had a disagreement over the diagnostic measures and methods of treatment that were afforded to her by prison officials". (Doc. 67-1, p. 19). Because there is "no violation of a clearly established law and Defendants' conduct does not violate an established constitutional right", Defendants are entitled to immunity. (Doc. 67-1, p. 20).

Even if Plaintiffs establish the first prong of the qualified immunity analysis, Defendants argue that they are still entitled to qualified immunity under the second prong because any violation "was not objectively contrary to clearly established law". (*Id.*). Plaintiffs allege that despite the treatment that Landry received, she should have been brought to a medical facility separate and apart from the prison. Defendants maintain that it would not have been clear to a reasonable officer that it was unlawful to obey Landry's requests. Defendants also contend that there was no "reckless disregard" for a "clearly established law". (Doc. 67-1, p. 20).

Defendants third and final argument in their motion is that Plaintiffs have alleged various state law claims, and Defendants suggest that the Court should decline to exercise supplemental jurisdiction. (Doc. 67-1, p. 20). Defendants argue that the Court is authorized to decline to exercise supplemental jurisdiction if: (1) the claims raise novel or complex issues of state law; (2) the claims would substantially predominate over the claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it had original jurisdiction; or (4) for any other compelling reason. (Doc. 67-1, p. 21). Defendants argue that the

Court should dismiss the claims over which it has original jurisdiction and, therefore, should elect not to exercise supplemental jurisdiction over the remaining state law claims. In the alternative, Defendants argue that the state law claims will predominate over the Plaintiffs' remaining federal claims. (Doc. 67-1, p. 21).

Defendants also specifically seek dismissal of Washington and Gilmore's "bystander damages" claims under La. Civ. Code Art. 2315.6. (*Id.*). "Bystander" claims are those where the claimant suffers serious mental anguish and emotional distress from witnessing or coming upon the scene of an event soon thereafter. La. Civ. Code Art. 2315.6. Here, Washington and Gilmore claim that they suffered mental anguish and emotional distress when they retrieved Landry from LCIW and observed her "severe and serious" medical condition. (Doc. 67-1, p. 22 (citing Doc. 52, p. 7, ¶ 27)). Defendants argue that because Washington and Gilmore did not witness a specific event or specify a traumatic or shocking occurrence that injured Landry, their claim must fail. (Doc. 67-1, pp. 22-23).

### 2. Plaintiffs' Argument

In response to Defendants' first argument regarding Plaintiffs' claims under Section 1983 against Defendants in their official capacities only, Plaintiffs concede that Defendants "were dismissed in their official capacity". (Doc. 74, p. 1 (citing Doc. 32 and 40)). Plaintiffs further acknowledge that their claims against Defendants in their individual capacities have been retained. (Doc. 74, p. 2).

Plaintiffs deny that the Defendants are entitled to immunity "under federal or Louisiana law". (Doc. 74, p. 2). Plaintiffs first argue that Dr. Prejean, Nurse Practitioner Ross, and Medical Unit Director Doe were directly involved with Landry's treatment and are "necessary to the proper prosecution of this complaint". (Doc. 74, p. 3). Plaintiffs rely upon *Dauzat v. Carter*, Civ. A. No.

14-0239, 2015 WL 2066472 (E.D. La. Apr. 30, 2015), where an adult male inmate "kept getting ignored" and was not referred for treatment despite signs of needed medical attention. Plaintiffs argue that in *Dauzat* the claims against the members of the medical team were allowed to proceed and that the same should be allowed here. (Doc. 74, pp. 3-4).

Regarding Plaintiffs' claims adverse to Former Warden Rogers and Warden Boutte, Plaintiffs argue that they are "not entitled to qualified and/or sovereign immunity". (Doc. 74, p. 4 (citing *Price v. Louisiana et al*, Civ. A. No. 16-00402, 2017 WL 4686035 (M.D. La. Oct. 18, 2017))). Little argument is provided as to the applicability of *Price*. Plaintiffs then argue that there are "exceptions to sovereign immunity". (Doc. 74, p. 4 (citing *Thompson v. Belt*, 828 F.2d 298 (5th Cir. 1987))). Plaintiffs argue that Former Warden Rogers and Warden Boutte are "necessary" for the "proper adjudication" of their "wrongdoing" and are "essential" to the "explicit pattern and practice that occurred at LCIW". (Doc. 74, p. 4). Lastly, Plaintiffs argue that "the wardens receive no sovereign immunity, because the Plaintiffs averred that the warden[s'] erroneous actions in denying access to urgently needed medical care actually became a policy", which the medical team carried out. Plaintiffs contend that this satisfies the pleading requirements under the *Monell* line of cases. (Doc. 74, p. 5 (citing *Monell v. Dept. of Social Services of the City of N.Y.*, 463 U.S. 658 (1978))).

Plaintiffs continue by arguing that "no dismissal of the wardens are proper at this juncture" because: (1) of their direct actions in not allowing patients to be seen off-site; and (2) of their pattern and practice rising to the level of an actual policy. (Doc. 74, p. 6). Plaintiffs aver that Landry "repeatedly and consistently sought medical relief for a period of seven days" but was ignored. Plaintiffs characterize this seven-day period as the "policy, systematic pattern and practice, as well as the direct acts and inaction of the wardens". (*Id.*).

Plaintiffs then address Defendants' argument that this Court should not exercise supplemental jurisdiction over the state law claims. Plaintiffs argue that the claims derive from the same case or controversy seeking the "'economy, convenience, fairness, and comity' mandated to include the pendant state law claims". (Doc. 74, p. 7). Also, Plaintiffs argue that their state law claims of negligence, assault, negligent and intentional infliction of emotional distress, and bystander liability will not predominate over the federal claims. (Doc. 74, p. 8). Lastly, Plaintiffs argue that the federal claims, such as "the deliberate medical indifference claim", replicate the state law claims, such as the "negligent and intentional action and/or inaction" claim; therefore, supplemental jurisdiction should be exercised in the interest of judicial "economy, convenience, fairness, and comity". (Doc. 74, p. 9).

## II.     Motion for Judgment on the Pleadings

### A.     Rule 12(c) Legal Standard

Rule 12(c) provides that, after the pleadings are closed but early enough not to delay trial, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 509–10 (1990) ).     The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002)).

**B.      Rule 12(b)(6) Legal Standard**

In *Johnson v. City of Shelby, Miss*., 135 S. Ct. 346 (2014), the Supreme Court explained,

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader

is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for

imperfect statement of the legal theory supporting the claim asserted."   135 S. Ct. at 346-47

(citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has

explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true)
> (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant
> evidence of each element of a claim.  'Asking for [such] plausible grounds to infer
> [the element of a claim] *does not impose a probability requirement* at the pleading
> stage; it simply calls for enough fact to raise a reasonable expectation that discovery
> will reveal [that the elements of the claim existed].'

*Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the 'assumption of truth' to conclusions,
> factual allegations remain so entitled.  Once those factual allegations are identified,
> drawing on the court's judicial experience and common sense, the analysis is
> whether those facts, which need not be detailed or specific, allow 'the court to draw
> the reasonable inference that the defendant is liable for the misconduct alleged.'
> [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*,
> 55[0] U.S. at 556.  This analysis is not substantively different from that set forth in
> *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery
> must be undertaken in order to raise relevant information to support an element of
> the claim.  The standard, under the specific language of Fed. R. Civ. P. 8(a)(2),
> remains that the defendant be given adequate notice of the claim and the grounds
> upon which it is based.  The standard is met by the 'reasonable inference' the court
> must make that, with or without discovery, the facts set forth a plausible claim for
> relief under a particular theory of law provided that there is a 'reasonable
> expectation' that 'discovery will reveal relevant evidence of each element of the
> claim.'  *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502-03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" "has been asserted". *Id.* at 503.

## III. Discussion

### A. Section 1983 Claims

#### 1. Official Capacity Claims – Sovereign Immunity

Defendants first move to dismiss any official capacity claim made under 42 U.S.C. § 1983 against them on two grounds: (1) such claims are essentially claims against the state, and the state is not a "person" for purposes of § 1983, and (2) these claims have already been dismissed. (Doc. 40). Plaintiffs acknowledge that Defendants "were dismissed in their official capacity". (Doc. 74, p. 1 (citing Docs. 32, 40)). Indeed, this Court ruled:

> Plaintiffs offer little meaningful opposition to or argument concerning Defendants' sovereign immunity argument. The Court finds that the argument is well[-]founded and the official-capacity claims are dismissed without prejudice for lack of jurisdiction. 'A suit against a state official in his official capacity is treated as a suit against the state.' *Lesley v. Cain*, 2015 WL 1310556 at *2 (M.D. La. Feb. 3, 2015)(citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)); *see also Turner v. Houma Mun. Fire and Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000)(official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985))). As this Court discussed in connection with the first motion to dismiss, with exceptions not present in this case, states and their agencies enjoy sovereign immunity barring suit against them in federal court. (*See* Doc. 30 at 2); *see also Raj v. Louisiana State Univ.*, 714 F.3d 322, 329 (5th Cir. 2013)(sovereign immunity bars federal courts from hearing state law claims brought in federal court against state entities).

(Doc. 40, p. 4). Given Plaintiffs' concession and this Court's prior ruling, the Court will deny Defendants' motion with regard to the official capacity claims under Section 1983 as moot.

### 2. Individual Capacity Claims – Qualified Immunity Standard and Summary

A plaintiff may bring a claim under Section 1983 against persons in their individual or official capacities, or against a governmental entity. *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). When a person is sued in his or her individual capacity, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky*, 473 U.S. at 166. A defendant sued in his individual capacity may assert personal immunity defenses like qualified immunity, which protect government officials "acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Wallace v. Cty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005); *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034 (1987)).

The Fifth Circuit has held that courts should utilize a two-prong analysis when evaluating a qualified immunity defense. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). First, the court must determine whether the plaintiff has alleged a violation of a clearly established constitutional right. *Id.* Additionally, the court must determine whether the official's conduct was objectively reasonable under clearly established law existing at the time of the incident. *Id.* The determination of whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury to decide. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances

in the particular case at hand." *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed. 2d 565 (2009).

"'Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kisela v. Hughes*, ⸺ U.S. ⸺, 138 S. Ct. 1148, 1152, ⸺ L.Ed.2d ⸺ (2018)(per curiam)(quoting *White v. Pauly*, 580 U.S. ⸺, ⸺, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017)(per curiam )(alterations and internal quotation marks omitted)). "'Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004)(per curiam)).

"Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *White*, 580 U.S. at ⸺, 137 S. Ct. at 551 (internal quotation marks omitted)). "'In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *White*, 580 U.S. at ⸺, 137 S.Ct. at 551 (internal quotation marks omitted)).

"'Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers.'" *Kisela*, 138 S. Ct. at 1153 (quoting *White*, 580 U.S., at ⸺, 137 S.Ct. at 552 (internal quotation marks omitted)). "But ... [a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. ⸺, ⸺, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014)). "That is a necessary part of the qualified-immunity standard[.]" *Id.*

Having carefully considered the law, allegations of the operative complaint, and arguments of the parties, Plaintiffs' claims under Section 1983 against all Defendants in their individual capacities will be dismissed for the reasons set forth below. In short, all Defendants are entitled to qualified immunity.

First, as to the constitutional violation prong, the Court first explains below that Defendants Former Warden Rogers, Warden Boutte, and Medical Unit Director Doe are not liable as supervisory officials. Second, the Court discusses that Defendants Dr. Prejean and Nurse Practitioner Ross did not act with deliberate indifference.

As to the second prong, again, to survive a motion to dismiss on qualified immunity grounds, Plaintiffs must allege that Defendants violated Landry's constitutional rights and that their actions were objectively unreasonable in light of clearly established law. *See Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015). Because Plaintiffs have failed to allege a violation of a clearly established right under currently applicable constitutional law, Defendants are entitled to qualified immunity. *See Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999).

### a. Defendants Former Warden Rogers, Warden Boutte, and Medical Unit Director Doe - Supervisor Liability

Plaintiffs assert 42 U.S.C. § 1983 claims against Former Warden Rogers, Warden Boutte, and Medical Unit Director Doe in their individual capacities. The Defendants assert that Plaintiffs fail to establish that these Defendants acted as anything other than a supervisor, and therefore Plaintiffs fail to state a claim upon which relief can be granted under 42 U.S.C. § 1983.

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Simon v. LeBlanc*, 694 Fed.Appx. 260, 261 (5th Cir. 2017)(per curiam)(quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). "'A supervisory official may be held liable ... only if (1) he affirmatively participates in the acts that cause the constitutional

deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.'" *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)(quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). "'In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates.'" *Id.* (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted, alterations and emphasis in *Gates* )).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)(quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). "'For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)). "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed. 2d 412 (1989); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994)(en banc)). "'Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.'" *Id.* (quoting *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

Additionally, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Porter*, 659 F.3d at 446 (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992)).

Nevertheless, "[l]iability for failure to promulgate policy ... require[s] that the defendant ... acted with deliberate indifference." *Id.*

"Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997)(citing *Estelle*, 429 U.S. at 106). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." *Id.* (citing *Farmer*, 511 U.S. at 838-40, 114 S.Ct. at 1980). Therefore, "a state jail official's liability for episodic acts or omissions[2] cannot attach unless the official had subject knowledge of a substantial risk of serious harm to a [prisoner] but responded with deliberate indifference to that risk." *Hare*, 74 F.3d at 650.

Applying the foregoing standard, Plaintiffs have failed to state a claim for relief relative to Defendants, Former Warden Rogers, Warden Boutte, and Medical Unit Director Doe. First, Plaintiffs fail to allege any personal participation by these Defendants. Although Plaintiffs allege that Dr. Prejean and Nurse Practitioner Ross provided inappropriate medical treatment and/or ignored Landry's complaints, and that personnel refused to provide requested emergency treatment despite being notified, these allegations do not implicate any basis for liability to Former Warden Rogers, Warden Boutte, and Medical Unit Director Doe.

Specifically, Plaintiffs allege that Former Warden Rogers, Warden Boutte, and Medical Unit Director Doe were employed with LCIW. (Doc. 52, pp. 4-5). Plaintiffs generally allege the "callous indifference of the warden, nursing team and other members of the staff at LCIW" which allegedly rendered Landry "unable to stop the painful symptoms of her stroke onset, requiring

---

[2] Plaintiffs' claims of inadequate medical care and denial of medical care to an inmate allege episodic acts or omissions, which is measured by a standard of deliberate indifference. *Hare v. City of Corinth, MS*, 74 F.3d 633, 644 (5th Cir. 1996). In the absence of allegations that Defendants' actions or omissions were other than episodic, this Eighth Amendment analysis applies to inmates in denial of medical care cases. *See Hare*, 74 F.3d at 648-49 (citing *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1996)(applying the subjective standard of deliberate indifference enunciated in *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994), to a prisoner's medical care claim).

immediate attention to prevent more serious permanent injuries". (Doc. 52, p. 7). This is the extent of the factual allegations regarding the supervisor Defendants' alleged participation in Landry's medical care. Thus, Plaintiffs have failed to assert *any* personal participation by these Defendants in Landry's medical care. Again, in order for a prison official to be found liable under Section 1983, the official must have been personally involved in conduct causing an alleged deprivation of a constitutional right or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that these Defendants are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under Section 1983. *See Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009)(recognizing that "a supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Accordingly, in the absence of any allegation by Plaintiffs that these Defendants personally participated in Landry's medical care, this claim must be rejected.

Plaintiffs rely upon *Dauzat*, 2015 WL 2066472, in arguing that the claims against the medical team were allowed to proceed due to their personal involvement and that the same should hold true here. (Doc. 74, pp. 3-4). However, *Dauzat* is inapposite in many respects. First, *Dauzat* involved the claims of a *pro se* inmate, to which less stringent standards of review apply. *Dauzat*, at *8. Second, the claims against the warden in *Dauzat* were dismissed because the warden was *not* present or personally involved in the medical care and was *not* vicariously liable for the acts of the medical team. *Id.* Finally, the *pro se* plaintiff in *Dauzat* made specific allegations of the medical director's personal involvement in his medical care, which is not the case here. The Court

finds that the jurisprudence relied upon in this ruling to be more relevant to the factual allegations plead by Plaintiffs than those of *Dauzat*.

Additionally, and as is set forth above, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Porter*, 659 F.3d at 446 (quoting *Rhyne*, 973 F.2d at 392)). Nevertheless, "[l]iability for failure to promulgate policy ... require[s] that the defendant ... acted with deliberate indifference." *Id.* As the Fifth Circuit stated with respect to "failure-to-train" claims (and, by "logical" analogy, failure-to-promulgate claims):

> To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes ... employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in *de facto respondeat superior* liability.

*Porter*, 659 F.3d at 447 (citations, alterations, and quotations omitted).

Plaintiffs *generally* allege a "pattern or practice" to ignore "every single medical request" and that this was sanctioned by "the warden". (Doc. 52, p. 9). Plaintiffs, however, do not allege that it was "obvious" that this alleged "pattern or practice" would deprive Landry of her constitutional rights. Plaintiffs claim that the "wardens made a cognitive decision not to engage a proper resolution for this inmate". (*Id.*). However, Plaintiffs do not plead facts relevant to or in support of this alleged "cognitive decision" or of the purported "proper resolution". Rather, Plaintiffs' vague allegations are such that the warden Defendants made a decision with regard to Landry's care with which Plaintiffs disagreed and characterized the decision as an "[im]proper

resolution". As set forth in greater detail below, a disagreement in medical care does not qualify as deliberate indifference and certainly does not reflect a pattern or practice. "Furthermore, the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Gobert,* 463 F.3d at 346 (citations omitted). Although Plaintiffs generally allege that it was the "pattern and practice" of LCIW "to ignore and disregard" medical requests and that this was sanctioned by "the warden himself", (Doc. 52, p. 9, ¶ 33), Plaintiffs have made no allegations that Landry's constitutional rights were violated or likely to be violated as a result of a certain policy promulgated by these Defendants or the failure to promulgate such a policy. *See Porter*, 659 F.3d at 446.

Further, Plaintiffs' allegations do not contain facts supporting a "pattern" or repeated instances of ignored requests for medical care by those acting in a supervisory capacity. For example, Plaintiffs do not allege prior instances of inmates requesting additional medical care of the wardens or others acting in a supervisory capacity that went ignored. Other than the conclusory allegation that "LCIW" had a "pattern or practice" of ignoring medical requests, Plaintiffs do not allege that these specific Defendants acted with "subjective recklessness" in ignoring Landry's requests for additional medical treatment or of these specific Defendants engaging in a pattern of ignoring all requests for medical treatment. In fact, Plaintiffs only identify Nurse Practitioner Ross as someone to whom these requests were made. *See Dugas v. Cain*, No. 09-0177, 2010 WL 4695313, at *5 (M.D. La. Oct. 20, 2010), *report and recommendation adopted*, No. 09-177, 2010 WL 4704446 (M.D. La. Nov. 12, 2010)("the mere fact that the plaintiff may have made requests for medical attention in an institution housing more than 5,000 inmates does not establish any particularized knowledge on the part of the supervisory defendants, in the absence of an allegation that the defendants were personally involved in his health care"). *See also, Henderson v. LeBlanc,*

No. 16-265, 2018 WL 2050149, at *9 (M.D. La. May 2, 2018)(where the claims against a warden defendant were a "closer call", but there was "no allegation [he] received this information" of ignored requests for medical care). *See also, White v. Moore*, Civ. A. No. 11-574, 2013 WL 2368988, n. 1 (M.D. La. May 29, 2013)(dismissing Warden Rogers because he did not provide medical treatment to the plaintiff and did not institute a policy related to the plaintiff's medical care or lack thereof). As such, Plaintiffs' claim must be rejected.

As the Fifth Circuit and courts within it have repeatedly observed, supervisory officials are generally entitled to utilize a policy of referring particular medical matters to medical professionals and relying on their judgment. *See Pilinski v. Goodwin*, 2015 WL 2250377, at *5 (W.D. La. May 12, 2015); *Vasquez v. Dretke*, 226 F. App'x 338, 340 (5th Cir. 2007) (warden and director of clinical services "were not deliberately indifferent" where they merely "deferred to the judgment of medical professionals by denying ... dentures"); *Garza v. Chaney*, 2007 WL 4367882, at *6 (S.D. Tex. Dec. 13, 2007) (it was reasonable for assistant warden to rely on medical department to "handle" medical needs of inmates); *cf. Johnson*, 385 F.3d at 526 (supervisors were required to take "reasonable measures" to protect inmates, but they were not required to "intervene personally" in response to every inmate letter, and it was reasonable for them to discharge their duty by "referring the matter for further investigation or taking further administrative steps"); *Jones v. Livingston*, 2005 WL 3618316, at *3 (S.D. Tex. Jan. 6, 2005) (citing *Johnson v. Johnson* in ruling that it was reasonable for warden to refer medical matter to a doctor and rely on doctor's medical decisions); *Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008) (plaintiff argued that warden violated his constitutional rights because she knew of his needs for medication and a wheelchair and had control over prison medical department; while plaintiff may have put warden "on notice" that his needs were not being met, he did not show that warden was "personally involved" in his

medical care or that there was a causal connection between her conduct and alleged harm); *Jones v. St. Tammany Par. Jail*, 4 F.Supp.2d 606, 612 (E.D. La. 1998) (supervisor's actions were objectively reasonable where he relayed detainee's request for a wheelchair to medical personnel and told detainee that obtaining a wheelchair "depended on the medical personnel's assessment of his need for it"). Plaintiffs have made no showing that would except this case from the application of these principles. Therefore, Defendants' motion will be granted with respect to Plaintiffs' individual capacity Section 1983 claims against Former Warden Rogers, Warden Boutte, and Medical Unit Director Doe.

The Court acknowledges that in Paragraph 42 of the Second Amended Complaint, Plaintiffs plead claims of "negligence of defendant warden, Jim Rogers, and/or interim Defendant warden, Frederick Boutte, and/or any other prison personnel at LCIW" that was the "proximate cause" of Landry's alleged injury. Plaintiffs go on to make additional allegations that these same Defendants were "negligent in his failure to adequately hire, train, supervise, promote, demote, and discipline the medical staff and personnel at LCIW". (Doc. 52, p. 11, ¶ 42(b)). Plaintiffs mix general allegations of negligence with what could possibly be construed as "failure to train" allegations. At the Rule 12 motion to dismiss stage of this matter, in deference to Plaintiffs, and to the extent Plaintiffs attempted to plead a "failure to train" claim, the Court still finds that Plaintiffs have failed to state a claim. Plaintiffs' allegations are insufficient under Rule 12(b)(6) because Plaintiffs do not specifically allege that these Defendants' "failure to train" directly caused the violation Plaintiffs' rights, that there was a sufficient pattern of prior incidents (beyond mere conclusions), or that the need for more or different training was "so obvious" and "so likely to result in the violation of constitutional rights". *Estate of Davis ex rel. McCully v. City of N.*

*Richland Hills*, 406 F.3d 375, 381-82 (5th Cir. 2005)(citing *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998); *City of Canton, OH v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197 (1989)).

Based on the foregoing, the Court grants Defendants' motion with respect to Plaintiffs' claims of individual liability under Section 1983 against Former Warden Rogers, Warden Boutte, and Medical Unit Director Doe. These claims are dismissed with prejudice.

> **b.     Defendants Dr. Prejean and Nurse Practitioner Ross - Deliberate Indifference**

Plaintiffs assert 42 U.S.C. § 1983 claims for deliberate indifference to Landry's right to medical care against Dr. Prejean and Nurse Practitioner Ross in their individual capacities. The Defendants assert that Plaintiffs fail to establish that the Defendants acted with deliberate indifference, and therefore fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983.

In order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must be able to show that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether Landry received the treatment or accommodation that Plaintiffs believe she should have is not the issue. *Estelle v. Gamble, supra.* Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a Section 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer*, 511 U.S. at 839-30. As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The deliberate indifference standard sets a very high bar:

Plaintiffs must be able to establish that Defendants "refused to treat [her], ignored [her] complaints, intentionally treated [her] incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra.*

Again, "'[d]eliberate indifference' is a stringent standard of fault." *Estate of Davis*, 406 F.3d at 381 (quoting *Board of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 410). "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Id.* (citing *City of Canton*, 489 U.S. at 388; *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994)(en banc)). "'Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.'" *Id.* (quoting *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

Plaintiffs claim that Landry made initial complaints of being ill, pain, suffering and need for medical attention on Monday, May 30, 2016. The complaint is unclear to whom these complaints of feeling ill were made. (Doc. 52, p. 5). Plaintiffs allege that it was Nurse Practitioner Ross who ignored Landry's initial complaints of feeling ill on May 30, 2016. (Doc. 52, p. 6). According to Plaintiffs' complaint, Landry was taken to the infirmary the next day (presumably May 31, 2016), and that she was told that she had suffered "a stroke and/or stroke-like symptoms". (Doc. 52, p. 6). It is unclear whether it was Dr. Prejean who examined Landry on May 31, 2016, but the complaint alleges that Dr. Prejean is the physician who treated Landry and Nurse Practitioner Ross also treated her. (Doc. 52, p. 9). Plaintiffs claim that Landry was not brought to an emergency medical facility apart and separate from LCIW, despite Landry's requests. (Doc. 52, p. 6). Landry's complaints persisted, and Dr. Prejean administered an EKG, lab work of her blood, and x-rays on June 1, 2016, two days after the initial complaints. (Doc. 52, p. 6). Plaintiffs

claim that Landry's symptoms continued to worsen and that she made repeated requests for further medical care, but there was no further treatment that LCIW could provide. The complaint is not clear as to whom she made these general requests. (Doc. 52, pp. 6-7). Plaintiffs allege that Landry was released to her family on June 6, 2016, approximately one week after the initial complaints were made. (Doc. 52, p. 7). Plaintiffs complain that Defendants "kept returning the petitioner to her unit"; that there was "no appropriate intervention by the prison medical unit"; and the only medical treatment were the "few, basic tests". (Doc. 52, pp. 8-9). Plaintiffs generally allege "improper treatment" by Dr. Prejean and Nurse Practitioner Ross.

Plaintiffs claim that the medical personnel took some action in response to Landry's complaints and symptoms. Medical personnel did assess and treat Landry on the day following the alleged onset of symptoms and tests were administered the following day. It turned out that Landry's medical condition involved a stroke or stroke-like symptoms, but a misdiagnosis does not equal deliberate indifference. *Domino v. Texas Dept. of Corrections*, 239 F.3d 752, 756 (5th Cir. 2016)("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."). And good faith medical care that is off the mark or unsuccessful does not suggest deliberate indifference. *Zaunbrecher v. Gaudin*, 641 Fed. Appx. 340 (5th Cir. 2016)(reversing denial of qualified immunity for nurse and supervisor who rendered frequent treatment in response to an inmate's complaints but overlooked fatal case of acute peritonitis).

Plaintiffs also complain about the delay between Landry's initial symptoms on May 30, 2016, being treated one day later, having tests administered the day after that, and then receiving no further treatment until Landry was released four days later. There was some delay based on the allegations in the complaint, but a delay in medical care will violate the Eighth Amendment only

if the delay is based on deliberate indifference and results in substantial harm. *Mendoza v.*
*Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). *See also, Collins v. Medicated Dept.*, Civ. A. No.
15-2495, 2017 WL 2927326 (W.D. La. Apr. 11, 2017)(where the plaintiff's claims of deliberate
indifference for delayed medical treatment of one month for a stroke were dismissed on summary
judgment). *See also, Bouchereau v. Gautreaux*, Civ. A. No. 14-805, 2015 WL 5321285 (M.D. La.
Sept. 11, 2015)(where the plaintiff showed signs of convulsions, tremors, high fever, cuts,
abrasions and bruises and received no response to a request for treatment for three days; found not
to be deliberate indifference).

Even accepting Plaintiffs' alleged facts as true, as it must at the motion to dismiss stage,
the Court finds that Plaintiffs' allegations against Dr. Prejean and Nurse Practitioner Ross fail to
state a claim for deliberate indifference. Although Plaintiffs allege facts that indicate that Dr.
Prejean may have drawn an inference of risk of harm through the tests ordered and administered
and the comment that there was no further treatment that could be given, Plaintiffs have alleged
no facts to indicate that the risk of harm was substantial. Plaintiffs' allegation that Dr. Prejean
failed to refer Landry to another medical facility specializing in treating stroke victims fails to
show that Dr. Prejean acted in a way that shows the requisite indifference to save the claim. The
same holds true for Nurse Practitioner Ross and any failures to provide Landry with the treatment
that Landry thought she should receive. While Plaintiffs' claim may amount to negligence, it does
not give rise to a deliberate indifference claim under Section 1983. Again, while deliberate
indifference can be demonstrated by circumstantial evidence, it is an "extremely high standard" to
meet, and allegations of inadequate, improper, and unsuccessful treatment alone generally do not
suffice. *See Gobert*, 463 F.3d at 352; *see also Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015)
(deliberate indifference not established where medical records indicate that the plaintiff was

afforded extensive medical care by prison officials, and plaintiff's "history of complaints and the doctors' refusal to accommodate his requests in the manner he desired" did not change the result); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) ("Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."); *Hare*, 74 F.3d at 645 (even "gross negligence" does not meet deliberate indifference standard); *Zaunbrecher*, 641 F. App'x at 348 (nurse supervisor's decision to continue course of treatment absent an in-person examination for inmate who was vomiting and ultimately died due to a bowel obstruction was relevant to whether she complied with an optimal standard of care but not whether she was deliberately indifferent); *Reed*, 440 F. App'x at 346 (nurse's failure to order transport to hospital immediately after receiving notice of elevated vital signs would be "in the category of malpractice, not deliberate indifference").

Since the Court finds that Plaintiffs have failed to establish that Dr. Prejean and Nurse Practitioner Ross acted with deliberate indifference, Plaintiffs' claims under Section 1983 fail to state a claim upon which relief could be granted. Accordingly, the Court finds that the Defendants' motion shall be granted with respect to the Section 1983 claim of deliberate indifference asserted against Dr. Prejean and Nurse Practitioner Ross.

### 3. General Allegations

In Plaintiffs' Second Amended Complaint, Plaintiffs plead pages of "negligent, intentional, and otherwise culpable acts". (Doc. 52, pp. 11-16). Within the general paragraphs of "negligent, intentional and otherwise culpable acts", Plaintiffs make conclusory allegations of conduct mixed with vague references to federal claims. To the extent that Plaintiffs' inclusion of references to federal law or phrases commonly associated with federal causes of action or analysis of federal claims could be construed as enhanced pleading of Plaintiffs' claims under Section 1983, the Court

confirms that Defendants' motion to dismiss Plaintiffs' claims under Section 1983 is granted for the reasons stated above. The allegations contained in the cited pages of Plaintiffs' Second Amended Complaint are conclusory and plead in the context of alleged negligent acts, which do not rise to the level of deliberate indifference for the reasons stated above.

### B.    Leave to Amend

Plaintiffs have not requested leave to amend their complaint. The Court notes, however, that Plaintiffs have already been given the opportunity to amend their complaint and any additional amendment would be futile.

Federal Rule of Civil Procedure 15(a) requires the trial court to grant leave to amend "freely … when justice so requires". Fed. R. Civ. P. 15(a). "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Relying on cases from the Fifth Circuit, a district court in Texas articulated the standard as follows:

> When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002*); see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification … is considered an abuse of discretion.")(internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that 'the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face.' 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed. 1990)(footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999)("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.")(footnote omitted).

*Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013).

This Court previously granted Defendants' motion to dismiss Plaintiffs' claims against Defendants in their official capacity only. Consequently, Plaintiffs have had an opportunity to address the deficiencies in their complaint but have failed to adequately do so. Plaintiffs' pleadings and opposition also do not demonstrate that they could allege additional facts to state a cognizable claim under federal law. *See Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)(citing *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)(internal citations omitted)("denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile")); *Jebaco, Inc. v. Harrah's Operating Co*., 587 F.3d 314, 322 (5th Cir. 2009)(leave to amend may properly be denied where amendment would be futile). An amendment would be deemed futile "if it would fail to survive a Rule 12(b)(6) motion." *Marucci,* 751 F.3d at 378 (citing *Boggs v. Miss*., 331 F.3d 499, 508 (5th Cir. 2003).

Applying this standard, the Court will not allow Plaintiffs an additional amendment. As stated above, "repeated failures to cure deficiencies by amendments previously allowed" is a factor to consider when granting or denying leave to amend, as is undue delay. *Marucci Sports*, 751 F.3d at 378 (citation omitted). Additionally, an additional amendment would be futile, as Plaintiffs' Section 1983 claims would still fail to survive a Rule 12(b)(6) motion. *Id.* For these reasons, the Court will not allow an additional amendment.

### C.    Supplemental Jurisdiction

Having dismissed the Section 1983 claim against Defendants, the Court must determine whether to exercise supplemental jurisdiction over the Plaintiffs' state law claims. In short, the Court declines to exercise such jurisdiction.

Plaintiffs seek to invoke the supplemental jurisdiction of this Court over Plaintiffs' state law claims against Defendants. A district court may decline the exercise of supplemental jurisdiction if Plaintiffs' state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case and as is set forth above, Plaintiffs' allegations against Defendants may amount to negligence, gross negligence, or medical malpractice; however, the claims are not those sounding in a constitutional violation. Such claims under state law predominate in this matter. Also, having found that Plaintiffs' federal claims against Defendants should be dismissed, the exercise of supplemental jurisdiction over Plaintiffs' state law claims should be declined.[3]

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Motion for Judgment on the Pleadings (Doc. 67) is **GRANTED**, and Plaintiffs' claims under Section 1983 against Defendants, Former Warden Jim Rogers, Warden Fredrick Boutte, Dr. John F. Prejean, Medical Unit Director Doe, and Nurse Practitioner Pamela B. Ross, in their individual capacities are **DISMISSED WITH PREJUDICE**.

---

[3] The Court acknowledges that Defendants specifically moved to dismiss Plaintiffs' claim for bystander damages under La. Civ. Code art 2315.6. Because the Court will be dismissing Plaintiffs' claims under federal law and declining supplemental jurisdiction over Plaintiffs' claims under state law, the Court will pass upon whether Plaintiffs have stated a plausible bystander claim.

**IT IS ORDERED** that Defendants' motion seeking dismissal of any official capacity claims under Section 1983 is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendants, and such claims are **DISMISSED WTIHOUT PREJUDICE**.

Signed in Baton Rouge, Louisiana, on September 26, 2019.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**